IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | | |
|---|---|---|---|
| In re | ) | | **FILED** |
| | ) | | |
| ROBERT WALLACE LEWIS, | ) | Case No. 05-20393 | |
| | ) | CHAPTER 7 | |
| Debtor. | ) | | |
| | ) | | 4:00 pm, 10/11/06 |
| ROBIN LEWIS SHEPPERSON, | ) | | |
| | ) | | Joyce W. Harris |
| Plaintiff, | ) | | Clerk of Court |
| | ) | | |
| v. | ) | Adv. No. 05-2062 | |
| | ) | | |
| ROBERT WALLACE LEWIS, | ) | | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |
| ROBERT WALLACE LEWIS, | ) | | |
| | ) | | |
| Counter-Claimant, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| ROBIN LEWIS SHEPPERSON, | ) | | |
| | ) | | |
| Counter-Defendant. | ) | | |

**OPINION ON COMPLAINT**

On June 19, 2006, the court held a trial on the Complaint to Determine

Dischargeability of a Debt filed by Robin Lewis Shepperson.  Ms. Shepperson contends

certain debts owed to her by the Debtor, Robert Wallace Lewis, are nondischargeable under

11 U.S.C. §§ 523(a)(5) and (a)(15).  The court has considered the testimony and other

evidence, and the applicable law, and is prepared to rule.

**Jurisdiction**

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) & 1334(a).  This is a core proceeding under § 157(b)(2)(I).

**Findings of Fact**

The parties were previously married.  They have two children of the marriage, both minors at the time of the divorce.  On May 12, 2004, the Fremont County, Wyoming District Court (District Court) entered a Judgment and Decree of Divorce (Decree).  The Decree ratified the terms of a stipulated Property Settlement and Child Custody Agreement (Agreement).

The Agreement and Decree both state that the prayer of the Complaint was to determine the division of property, allocate marital debts and determine child custody and child support.  The provisions of the Agreement relevant here are:

> Husband [Lewis] shall pay to Wife [Shepperson] each month as a contribution to the support and maintenance of the minor children the sum of Seven Hundred Five and 00/100 Dollars ($705.00)
>
> . . .
>
> The parties agree that Wife shall provide a major medical policy covering the minor children.  Each party shall be responsible for one-half (1/2) of the deductible and costs not covered by insurance.
>
> . . .
>
> The parties do hereby specifically waive all rights to alimony, past, present, or future, and nothing stated or agreed herein shall be in any way construed as an award of alimony to either party.

. . .

> In order to equalize the property division, Husband shall pay to Wife the sum of $2,295.00 per month commencing on May 1, 2004 and such payment shall continue on the 1st day of each month thereafter through the month of December, 2005.

After the Agreement was executed, but before the Decree was entered, the parties purchased a home together on April 26, 2004. The purchase was apparently to provide a home for Shepperson and the children. They paid a down payment on the property of approximately $50,000.

Lewis did not make his child support payments or the property equalization payments. Shepperson returned to the District Court to enforce the Decree. On February 25, 2005, the District Court found Lewis in contempt and ordered him to pay up, increasing the amount of child support to make up the arrearage. The District Court also provided for a judicial lien on the real property to secure the payment of the "arrearage on the property equalization payment[s]". In response, Lewis filed his voluntary chapter 7 petition for relief in this court. This adversary proceeding followed.

At the time of the divorce, Lewis had net monthly income of $5,000 per month, derived from a contract breaking horses. Shepperson's net monthly income, without consideration of the child support payments, was $2,000.

After the filing of the bankruptcy, Shepperson petitioned the District Court to reduce Lewis's property equalization payment to $400.00. At the time of the trial, the District Court had not entered a ruling on the motion.

By the time of the trial, Lewis was remarried, he and his new wife have a child, and his wife is not a high-income earner. Lewis has not made a single payment under the property equalization order.

The evidence of the parties respective incomes and expenses at the trial was notably scarce. Lewis nets $1,123 every two weeks, $29,198 per year, or $2,433 per month. His wife's income was not provided, although Lewis testified she is ill and only works part time. Their joint expenses total $2,200, plus groceries in an unstated amount. Lewis also has a $37,000 federal income tax obligation arising out of the sale of the cattle Lewis obtained in the divorce.

Shepperson testified that she earns $2,400 gross per month. Her expenses include $400 per month for health insurance for her children and a $1,400 per month mortgage payment. Her other expenses, including vehicle expenses, utilities, food and child related costs, were not stated in detail. Also, in order to keep her house, Shepperson will be required to purchase Lewis's equity from the bankruptcy estate.

### Conclusions of Law

The court is hard pressed to determine from the presentation of this case exactly what the parties are disputing. Lewis did not state whether he disputes that the insurance deductible and other medical expenses for his children are support. Lewis contends the $2,295 payment is not alimony, but Shepperson never argued that it was alimony. Her counsel stated that the property equalization obligation was a "523(a)(15) debt." The

Complaint alleges debts that were never discussed at the trial and misstates the facts. The Joint Pretrial Statement and Order does not identify which debts are in dispute, stating instead, "The debt is dischargeable," and "it is harder on her than the debt (sic), if the debtor is discharged."

Section 523(a)(5)

On the off chance that Lewis disputes the medical expenses are support, the court will address the issue under 11 U.S.C. § 523(a)(5). That section excepts from discharge a debt for support to the extent the debt actually functions as support. The plaintiff has the burden to prove by a preponderance of the evidence that the debt should be excepted from discharge. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 661 (1991).

The Tenth Circuit Court of Appeals set out the manner in which the bankruptcy court makes a determination under § 523(a)(5) in *In re Sampson*, 997 F.2d 717 (10th Cir. 1993). Under *Sampson*, the court must look to the parties' shared intent, or the intent of the divorce court, to determine the nature of an obligation. If the court finds that the debt was intended as support, the decision also requires an inquiry into the actual substance of the obligation. *Id*. at 723.

In this case, the Agreement and Decree do not characterize the medical expenses. However, the only types of debt addressed in the Agreement and Decree are marital debt, child support and property distribution obligations. The children's medical expenses are obviously not marital debt or property settlement. A child's medical expenses are a

necessary element of the child's support.  The court concludes the medical expenses and

insurance deductibles for the children are nondischargeable support obligations under §

523(a)(5).

Section 523(a)(15)

The other obligation in dispute, no evidence having been presented regarding the

indemnification debts, is the property equalization payment of $2,295 per month.  The

plaintiff contends this debt is nondischargeable under § 523(a)(15).  A debtor is not

discharged from any debt incurred in the course of a divorce decree unless:

> (A)    the debtor does not have the ability to pay such debt from income
> or property of the debtor not reasonably necessary to be expended for the
> maintenance or support of the debtor or a dependent of the debtor . . .; or

> (B)    discharging such debt would result in a benefit to the debtor that
> outweighs the detrimental consequences to a spouse, former spouse, or child
> of the debtor.  11 U.S.C. § 523(a)(15).

The debtor has the burden of proof as to the applicability of both exceptions.  *In re*

*Crosswhite*, 148 F.3d 879, (7th Cir. 1998); *In re Simons*, 193 B.R. 48, 50 (Bankr. W.D. Okla.

1996).

In this case, the debtor's evidence shows he does not have the funds to pay the

plaintiff $2,295 per month.  The debtor lost the contract breaking horses after the divorce

under which he was earning $5,000 per month.  The debtor's entire income is barely more

than the amount of the payment.

Shepperson argues that she has requested the District Court to reduce the amount of

the payment to $400 per month, a tacit admission that Lewis cannot afford to pay the amount ordered in the Decree. The court recognizes that Shepperson is in a no-win situation because the District Court has refused to rule on the request until this court determines dischargeability. However, the court must determine this case on the basis of the facts as they stand today, not on what the District Court may order in the future.

As is often the case, neither party can afford the consequences of this divorce. Nevertheless, the first element of § 523(a)(15) is met and the debt is dischargeable.

The court will enter a judgment in accordance with this Opinion.

DATED this ____ day of October, 2006.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Ken McCartney
    Michele Russell